**Milo L. PIKE and Penny P. Pike, Plaintiffs, Appellants,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 95–2358.**

United States Court of Appeals, First Circuit.

Heard May 7, 1996.

Decided July 12, 1996.

* Of the District of Massachusetts, sitting by desig-

Eugene M. Van Loan, III with whom Richard Thorner and Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, were on brief, for appellants.

Thomas V.M. Linguanti with whom Gary R. Allen, Jonathan S. Cohen, Attorneys, Tax Division, Department of Justice, Loretta C. Argrett, Assistant Attorney General, and Paul M. Gagnon, United States Attorney, were on brief, for appellee.

Before CYR, Circuit Judge, ALDRICH, Senior Circuit Judge, and GERTNER,* District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

This case involves the government's familiar income tax principle of taxing gains in the sale or exchange of capital assets but disallowing deduction of losses, except against comparable taxable gains. *See* 26 U.S.C. § 1211. During the 1980s, Milo Pike ("Taxpayer") made substantial purchases of stock in a number of New England banks with the intent of creating a regional bank holding company, whose stock he could sell at a profit. Before realizing this goal, however, the shares universally declined in value and, in 1989, he sold them at a substantial loss. He classified the loss as "capital" on his 1989 federal tax return, which precluded deduction in full. *See id.* In this action to recover taxes overpaid, Taxpayer claims his special

nation.

scheme and purpose for making the purchases requires that the stock be classified as "inventory," a non-capital asset under 26 U.S.C. § 1221(1), entitling him to full deduction. The Commissioner did not agree. Nor did the district court. Taxpayer appeals. We affirm.

Under § 1221 of the Revenue Code all taxpayer property not qualifying for a specific exception, whether or not held in connection with the taxpayer's trade or business, is deemed capital. Five "exclusive" categories are excepted, *Arkansas Best Corp. v. Commissioner*, 485 U.S. 212, 217–18, 108 S.Ct. 971, 974–75, 99 L.Ed.2d 183 (1988), including

> (1) Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

26 U.S.C. § 1221(1). Taxpayer does not contend that the bank shares were "stock in trade," nor that he was holding them for sale to customers in the ordinary course of his business, nor that they can be exempted under any of the other four provisions of § 1221. He does not even claim that the stock was "inventory" in the usual sense. He nonetheless claims that summary judgment was improper because there remain unresolved issues of material fact as to whether the stock was sufficiently "inventory-like" to qualify for exemption from capital asset status under the above-quoted exception, based on his intent in acquiring it. We disagree.

In determining whether property qualifies for exclusion from capital asset treatment, the Supreme Court has indicated that a taxpayer's business purpose is relevant *only* in the very narrow circumstance wherein an otherwise non-inventory asset may be regarded as a *substitute* for inventory—i.e., property acquired in a "hedging transaction[ ] that [was] an integral part of a business' inventory-purchase system." *Arkansas Best*, 485 U.S. at 221–22, 108 S.Ct. at 977 (explicitly narrowing *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 52–53, 76 S.Ct. 20, 24–25, 100 L.Ed. 29 (1955)). Even then there must be some objectively demonstrable nexus to an "inventory-purchase system," beyond the taxpayer's subjective intent. *Id.* at 221, 222, 108 S.Ct. at 976, 977. In *Arkansas Best*, the Court ruled that stock in a local bank acquired for the business-related purpose of preserving the taxpayer's financial reputation, *id.* at 215, 108 S.Ct. at 973, fell "outside the classes of property excluded from capital-asset status" under § 1221, thus the loss arising from its sale was "a capital loss." *Id.* at 223, 108 S.Ct. at 978. Here, Taxpayer's project was to purchase enough shares of stock in certain banks sufficient to obtain the ability to persuade management to join in his plan of forming the overall holding company, whose stock he would then sell. He claims the bank stock was the "raw material" in his business of building the holding company and, as such, qualifies for the inventory exception.

Overall, Taxpayer was simply seeking capital gains by an intermediate step—acquiring enough capital investments, that, jointly, might be converted into new assets. His scheme was manifestly not a "hedge" integral to protecting inventory or an inventory-purchase system. That it involved work on his part and was necessary to his overall business plan does not change the basic picture. His theory that the building blocks of his would-be empire should qualify as "inventory" would allow aspiring entrepreneurs significant influence over whether losses receive capital or ordinary treatment. *Id.* at 222, 108 S.Ct. at 977. An ordinary investor in capital stock, objectively not entitled to take losses not offset by gains, could do so if he could show a business-related motive to realize gains through conversion and disposition of those assets. Such an alluring door for escaping taxpayers was firmly locked in *Arkansas Best*.

*Affirmed.*